TANZA FREEMAN )
)
    Plaintiff, )        CIVIL ACTION FILE NO.:
)
)
)
v. )        _____
)
SUPPORT SOLUTIONS )        JURY TRIAL DEMANDED
OF THE MID-SOUTH, LLC )
)
    Defendant. )

## VERIFIED COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY

**COMES NOW** Tanza Freeman, ("Ms. Freeman"), Plaintiff in the above styled action, by and through the undersigned counsel, and files her Verified Complaint for Damages and Demand for Jury Trial ("Complaint"). In support thereof, Plaintiff respectfully shows the Court as follows:

## PRELIMINARY STATEMENT

1. The Plaintiff, Ms. Freeman, brings this action against Support Solutions of the Mid-South, LLC ("SSMS") for violations of Title VII of the Civil Rights Act of 1984, ("Title VII") pursuant to 42 U.S.C. §§2000e et seq., and the Age Discrimination in Employment Act 1967, ("ADEA"); as codified, 29 U.S.C. §§621 to 634, 2000e-17.

1

2. Ms. Freeman is female, over forty years of age, and is a person of African American heritage.

3. Defendant, SSMS, hired Ms. Freeman in the position of direct support person. Her position responsibilities included providing 24-hour direct services to individuals with intellectual and developmental disabilities, living n SSMS supportive housing units.

4. Ms. Freeman came to the position with years of experience working with vulnerable populations, which included supervisory responsibilities at Silverdale Detention Center.

5. Within six months, Defendant promoted Ms. Freeman to House Manager with assigned supervisory responsibility for direct support staff.

6. Additionally, through her hard work and good attitude, she garnered the respect and admiration of her clients and colleagues, earning company-wide recognition.

7. Despite Ms. Freeman's superior performance and many achievements, Defendant subjected her to discrimination and retaliation due to her race and age.

8. On August 27, 2020, Defendant SSMS placed Ms. Freeman on unpaid leave after the death of her client WB.

9. SSMS initiated an investigation with the State of Tennessee Department of Intellectual and Developmental Disabilities, (DIDD) which, under SSMS policy, required Ms. Freeman to be placed on leave.

10. DIDD made no independent determination that Ms. Freeman should be placed off duty pending the conclusion of a DIDD investigation.

11. Ms. Freeman was placed on leave without pay for a period of a four-month period awaiting the conclusion of the DIDD investigation findings.

12. Upon her return to work, she was demoted from house manager to direct support person, resulting in a significant reduction in pay.

13. Michael Hall, is a similarly situated SSMS employee, who is not in Ms. Freeman's protected class, who was treated more favorably when she was demoted from House Manager to lower paying alternate position.

14. Ms. Freeman further contends that the promotion of an African American male under the age of 40, in the only available House Manager assignment available for her to be placed in upon her return to work, is simply pretext for discrimination and was used to camouflage the employer's discriminatory intent.

15. Plaintiff Freeman has suffered significant emotional and monetary damages as a result of the acts of Defendant SSMS and its employment practices, and therefore seeks just compensation under Title VII and the ADE.

**JURISDICTION**

16. This Court has jurisdiction over this action pursuant to Title VII, based on race and gender, and the ADEA basis on age.

**VENUE**

17. Venue is proper in this district under 28 U.S.C. 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims occurred in Hamilton County Tennessee.

**CONDITIONS PRECEDENT**

18. On April 26, 2021, Ms. Freeman filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") in which she identified acts by Defendant, Support Solutions of the Mid-South, LLC, ("SSMS") which constitutes illegal discrimination based on race, and age.

19. On December 14, 2021, the EEOC issued a Notice of Right to Sue.

20. The EEOC Notice of Right to Sue was received by Ms. Freeman on December 14, 2021, which is attached as exhibit one. [1]

21. The Complaint has been timely filed within ninety days of the receipt of the Notice of Right to Sue.

---

[1] A true and accurate copy of the Notice of Right to Sue was issued by EEOC on December 14, 2021, is incorporated herein and attached hereto as Exhibit 1.

Case 1:22-cv-00057-TAV-CHS Document 1 Filed 03/11/22 Page 5 of 16 PageID #: 5

22. Ms. Freeman has fully complied with all of the procedural prerequisites to jurisdiction in United States District Court for the Eastern District of Tennessee.

## PARTIES

23. Plaintiff Freeman is an African American woman, over forty (40) years of age, who is a resident of the State of Tennessee, County of Hamilton.

24. Plaintiff Freeman is an employee, as defined by Title VII, and the ADEA.

25. Plaintiff Freeman as a resident of Hamilton County, Tennessee, is in the judicial district of the U.S. District Court - Eastern District of Tennessee.

26. Defendant, Support Solutions of the Mid-South, LLC, (SSMS) is an employer as defined by Title VII of the Civil Rights Act 1964, and the Age Discrimination in Employment Act of 1967, (ADEA).

27. Defendant, SMS principal place of business is 5909 Shelby Oaks Drive, Suite 100, Memphis, TN 38134, and can be served with process by serving its registered agent, Larry L. Durbin, at the same address.

## FACTS

28. Ms. Freeman asserts and incorporates by reference, paragraphs 1-27, as if fully set forth herein.

5

29. Defendant SSMS provides a full range of supportive services to individuals with intellectual and developmental disabilities, and provides access to 24-hour in-home supportive living care in a community setting.

30. SSMS employs more than twenty employees.

31. In 2016, Defendant, SSMS, hired Ms. Freeman in the position of direct support persons which is referenced as (dsp) staff.

32. DSP staff persons track and monitor client activities, assist with meals, medication administration, and life skill management assistance to individuals with intellectual and developmental disabilities, who contract with Defendant SSMS for 24 hour community housing and case management services.

33. Ms. Freeman came to the position with years of experience working with vulnerable population, which included supervisory responsibilities at Silverdale Detention Center.

34. Within six months, SSMS promoted Ms. Freeman to House Manager with assigned supervisory responsibility for direct support staff.

35. Additionally, through her hard work and good attitude she garnered the respect and admiration of her clients and colleagues, earning company-wide recognition.

**GARRETT HOUSE INCIDENT**

6

36. In 2016, Ms. Freeman was assigned as House Manager to the Garrett House, located in Hixson, TN.

37. WB and SF were the two supportive living clients assigned to the Garrett house.

38. SF had a history of violent behavior. Prior to moving to Garrett House, he beat a SSMS direct support staff person in the head with a 2x4.

39. WB was not known as a violent person. However, both clients were very high functioning and had a need for personal autonomy.

40. Ms. Freeman notified SSMS management of the need to assign more than one direct support staff person to Garrett House due to on-going safety concerns.

41. Her multiple requests for increased staff were denied.

42. Law enforcement contacted Ms. Freeman, in response to a domestic dispute at the Garrett House. Ms. Freeman met with law enforcement and entered the supportive living residence with the assistance of law enforcement.

43. Upon entry with law enforcement, she discovered the body of the on-duty direct support person assigned to the Garrett House.

44. SF had left the Garett House on foot prior to the entry of law enforcement. SB was located outside the residence.

45. As evidence of the strength of Ms. Freeman's relationship with her supportive living clients, Mr. Sanchez contacted Ms. Freeman by phone from jail and confessed to the crime.

46. Ms. Freeman resumed her House Manager, which included responsibility for WB, who was relocated from the Garrett House to the Baymont Hotel as a single occupancy supportive living client.

47. Ms. Freeman was traumatized by these tragic events and gain access to counseling through the State of Tennessee Department of Intellectual and Developmental Disabilities (DIDD).

48. IMs. Freeman continued to work her regular shift after the tragic death of her co-worker.

## BAYMONT HOUSE INCIDENT

49. Six months later on August 27, 2020, Ms. Freeman presented to her 7:00 am to 3:00 pm shift at the Baymont Hotel.

50. As was her practice, Ms. Freeman notified the on-duty DSP that she was in the parking lot and then proceeded to enter the building.

51. After announcing her present to the front desk clerk, she then proceeded to get her client a cup of coffee, as was her daily routine.

52. Upon entering the one room Baymont housing unit occupied by WB and SSMS staff, she discovery the body of WB, and immediately directed the

8

Baymont Hotel front desk staff person to call an ambulance so that she could attend to her client.

53. In her attempt to assess WB condition, Ms. Freeman noted that his body was cold and hard, and the presence of body fluids draining from of his body.

54. When the EMS unit arrived at the scene and looked at the body, and they left the room without administering CPR.

55. The EMS team advised Ms. Freeman that based on the conditions of WB's body, they estimated that WB probably died around 4:00 am in the morning.

56. Ms. Freeman's shift started at 7:00 am. She did not receive a report from the on-duty direct support person, who had worked the 11:00 pm to 7:00 am shift. 57. According to the DIDD Investigative Findings, Ms. Freeman entered the unit at or around 7:48 am, expecting to find WB ready for his coffee.

**DEMOTION AFTER RETURN TO WORK**

57. Unlike the Garrett house incident, Defendant SSMS, did not allow Ms. Freeman to return to House Manager Assignments after the death of WB.

58. Plaintiff Freeman was advised that she could not return to her House Management duties until the resolution of the DIDD investigation, which was initiated by SSMS management.

9

59. DIDD did not remove Ms. Freeman from her assigned duties, Defendant SSMS placed Ms. Freeman on leave without pay until the completion of the DIDD investigation. SSMS acted independently from DIDD.

60. The DIDD investigative findings states in its' conclusion that Ms. Freeman actions in response to discovering her client unresponsive on 8/27/2020, did not placed her client at a probable risk of serious harm or contributed to his unexpected death.

61. The DIDD findings did in fact state the Ms. Free, supervisor Lunsford, and supervisor Yansane, were aware of the decedent's unexpected death, and they all failed to report the death to the DIDD Investigation Hotline within the required four-hour reporting requirement.

62. What is missing is the fact that Ms. Freeman, was instructed by Program Coordinator, Lunsford and Program Manager, Abdoulaye Yansane to contact WB family members, and that "they" would make all necessary calls.

63. With the death of WB, the Baymont House was unoccupied.

64. Defendant SSMS had the option to place Ms. Freeman in any available House Manager position after the conclusion of the DIDD investigation, but did not do so. They demoted her when a House Manager position was available.

65. Defendant SSMS had a history of placing House Managers without a placement in open housing.

66. Plaintiff SSMS chose to demote Ms. Freeman, even when open houses were available. When Ms. Freeman was allowed to return to work, she did without any notification that her House Manager position was eliminated.

67. Staff had to inform Ms. Freeman that she had been demoted to the role of a direct service provider.

68. SSMS had an open house manager position at least eight months prior to the death of WB.

69. It is Plaintiff Freeman's information and belief that one day prior to her scheduled return to work, Defendant SSMS filled position with an African American Male under the forty.

70. Plaintiff Freeman contends that this was an act of retaliation on the part of her employer.

## DISCRIMINATION BASED ON RACE
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

71. Plaintiff Freeman realleges and incorporates Paragraphs 1 through 70 of the Complaint as if fully set forth herein.

72. Plaintiff will show that the evidence will in fact establish a violation of Title VII race and age based on the following evidence:

(1) Plaintiff belongs to a protected group;

(2) Plaintiff was placed on leave without pay and demoted;

Case 1:22-cv-00057-TAV-CHS   Document 1   Filed 03/11/22   Page 12 of 16   PageID #: 12

(3) Other similarly situated parties outside Plaintiff's protected class were received more favorable treatment;

(4) And, the Employer cannot explain the difference in treatment and/or

73. The evidence will show that Ms. Freeman is a member of a protected class, African American, that she was placed on leave without pay and demoted, and that other similarly situated parties outside Plaintiff's protected class, namely White co-worker Michael Hall was treated more favorable than members of a protected class.

73. The difference in treatment based on race is evident even during the initial application process.

74. All SSMS applicants are required to have earn a high school diploma or GED. Michael Hall is the only known SSMS applicant to be granted a waiver of the High School or GED educational requirements association with the position of direct service provider or house manager.

75. Michael Hall was promoted from house manager to office staff, as a bookkeeper, and was then demoted back to house manager without a reduction in pay.

75. Michael Hall was given an opportunity to choose which house she would accept. It is widely known that Ms. Hall turned down House Manager

12

assignments and still receive House Manager pay when she was not acting in a House Manager capacity.

76. SSMS Director of Corporate HR, Cynthia Frazier, states in the SSMS position statement to the EEOC that Michael Hall's pay was a simple oversight.

77. SSMS intentionally violated Plaintiff Freeman's rights under Title VII, and the ADEA by acting with malice and reckless indifference, and, as a result, should be held liable for punitive damages.

78. Ms. Freeman is a dedicated advocate for her clients with developmental and intellectual disabilities, loved and respected for her work.

**WHEREFORE,** Plaintiff Freeman demands the following:

1. That proper process be issued and be served upon Defendant through its registered agent and that Defendant be required to appear and answer the Complaint within the time required by law.

2. That Plaintiff be awarded a judgment against Defendant in the amount of $450,000.00.

3. That the cost of this action be awarded to Plaintiff including attorney fees and court cost.

4. That this Court award such further and other general relief to which Plaintiff may be entitled as a prevailing party.

13

Respectfully submitted.

**STRONG MOSS LAW**

Jacqueline Strong Moss, Attorney at Law
BPR# 022952
Executive Suites at Bailey
1089 Bailey Avenue, Suite C7
Chattanooga, TN 37404
Office: (423) 756-2707
Voice:  (423) 580-5621
Fax:     (931) 572-5483
E-mail:  **strongmosslaw@gmail.com**

14

Case 1:22-cv-00057-TAV-CHS   Document 1   Filed 03/11/22   Page 15 of 16   PageID #: 15

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

**STATE OF TENNESSEE**
**COUNTY OF HAMILTON**

I, Tanza Freeman, being duly sworn according to law, state that the facts set out in the above petition are true and correct to the best of my knowledge, information, and belief.

_____
**TANZA FREEMAN**

Sworn to and subscribed before me this the ___8th___ day of ___March___, 2022.

_____
Notary Public

My Commission expires: ___December 14, 2024___

14

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

TANZA FREEMAN,                      )
                                    )
    Plaintiff,  )
                                    )
v.                                  )    No. _____
                                    )
SUPPORT SOLUTIONS                   )    JURY TRIAL DEMANDED
OF THE MID-SOUTH, LLC               )
                                    )
    Defendant.  )

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2022, the foregoing Complaint and was served upon Support Solutions of the Mid-South, LLC, at 5909 Shelby Oaks Drive, Memphis, TN 38134 and electronically filed with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing:

**STRONG MOSS LAW**

1089 Bailey Avenue, Suite C7
Chattanooga, TN 37404
Office:    (423) 756-2707
Voice:    (423) 580-5621
Fax:    (931) 572-5483
E-Mail:    strongmosslaw@gmail.com

16